UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY PHILIP BRADLEY, | No. 2:17-cv-0828 MCE KJN P |
| Petitioner, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| WARDEN SPEARMAN, | |
| Respondent. | |

I. Introduction

Petitioner is a state prisoner, proceeding pro se and in forma pauperis, with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent filed an answer arguing that both of petitioner's claims are unexhausted, but that in any event, both claims present only a state law issue and therefore are not cognizable on federal habeas review. On October 17, 2017, the undersigned provided petitioner information on seeking stay and abeyance, and ordered petitioner to file his traverse and, if he chose, a motion for stay. (ECF No. 20.) In response, petitioner filed a motion for stay and abeyance of this action under Rhines v. Weber, 544 U.S. 269 (2005) ("Rhines"). As set forth below, the undersigned finds the instant petition is unexhausted, but in any event should be denied on the merits, and petitioner's motion for stay should be denied.

////

////

1

II. Procedural Background

On February 25, 2015, following jury trial, petitioner was convicted of voluntary manslaughter with an enhancement for firearm use. On May 13, 2015, petitioner was sentenced to the upper term of 11 years for voluntary manslaughter, and to an additional 10 years for the firearm allegation, for a total of 21 years in state prison. (ECF Nos. 1 at 1; 17-4 at 135 (Respondent's Ex. 8).)

Petitioner filed a timely appeal. On August 3, 2016, his conviction was affirmed by the California Court of Appeal, First Appellate District. (ECF No. 17-4 at 135 (Respondent's Ex. 8).)

On October 12, 2016, his petition for review was denied by the California Supreme Court without comment. (ECF No. 17-4 at 187 (Respondent's Ex. 10).)[1]

On April 14, 2017, the instant petition was placed in the hands of prison staff for mailing. (ECF No. 1 at 69.)

III. Facts Underlying the Conviction

> Defendant was charged by information with the murder of Vincent Winnie (Pen. Code,[FN1] § 187, subd. (a)). It was further alleged defendant personally and intentionally discharged a handgun in the commission of the offense (§§ 12022.5, subd. (a)(1); 12022.53, subds. (b)-(d)). A jury found defendant not guilty of murder, but convicted him of voluntary manslaughter and found true the allegation he used a firearm in the commission of that offense. The trial court imposed the upper term of 11 years for the manslaughter conviction, and an additional 10-year term for the firearm allegation, for a total of 21 years in state prison.
>
> Defendant told police that, the night before the shooting, he and Winnie had gone to several strip clubs in San Francisco. They were joined by Samantha Van Hoose, Winnie's girlfriend. At one point, defendant got into an argument with a bouncer. He threw a $100 bill at the bouncer and stormed off. Winnie caught up to defendant, and the two argued briefly. Winnie then walked away, leaving defendant on Broadway in San Francisco. Defendant returned to his home in Vallejo about 7:00 a.m. the following morning.
>
> Defendant received several messages from Winnie later that day. He called Winnie about 7:00 or 7:30 p.m. Defendant told police he

---

[1] Petitioner had ninety days from October 12, 2016, to file a petition for writ of certiorari with the U.S. Supreme Court. See Sup. Ct. R. 13. Thus, the deadline for filing a petition for writ of certiorari expired on January 10, 2017. The one year statute of limitations began to run the next day, January 11, 2017. Absent additional tolling, the limitations period expired on January 11, 2018.

|   |   |
|---|---|
| 1 | initially told Winnie he would drive to Oakland to retrieve several items he had left in Winnie's backpack the previous night. After the two argued on the phone, defendant claims he decided the trip to Oakland could wait until the following day. David Herd, Winnie's longtime friend, was at a bingo hall with Winnie when Winnie received the call from defendant. Herd did not hear the conversation, but said Winnie appeared "[m]ad," "[f]rustrated," and "[u]pset" when he finished the call. Winnie told Herd they were going to defendant's to drop off his personal items. Winnie, Herd, and Van Hoose took a taxi to the home of Winnie's uncle in Oakland, picked up a car there, and then drove to defendant's home in Vallejo. According to defendant, Van Hoose sent him a text message saying they would leave his possessions in his mailbox. |

Herd testified that when they arrived at defendant's home, he and Winnie got out of the car and Winnie walked up to the front door, set down the bag with defendant's items, and knocked lightly. As Winnie walked back towards the car, the garage door opened and defendant appeared, holding a gun down at his side. At the preliminary hearing, Herd testified defendant yelled "get the fuck out of here or words to that effect"; however, Herd did not remember this exchange at trial. When Winnie did not leave, defendant said, "You don't think I'll shoot this shit," fired the gun in the air, and then put the gun in Winnie's face. Winnie grabbed defendant's gun arm and hit him. A struggle ensued.

At one point the two separated, and defendant shot Winnie in the torso from two to four feet away. Winnie fell down. Herd ran up and tried to hold Winnie, and defendant pointed a gun in his face. Defendant told Herd to "get the fuck out of here," and then put the gun down and walked away. Herd carried Winnie to the car, and they drove off with Van Hoose. The parties stipulated that Winnie died from a gunshot wound to his left abdomen that caused a large amount of internal bleeding.

After the shooting, defendant offered his own version of the shooting to police. Defendant said he expected Winnie to leave his effects in his mailbox, and was surprised when he saw a car pull up and three people get out of it. Defendant heard someone bang on the door. Security cameras had been installed around the house because of recent break-in attempts, but they did not provide a clear view of who was there. Defendant opened the garage while carrying a gun in an unbuttoned holster. When he saw Winnie, defendant asked him why he was banging on his door. Defendant told Winnie to leave, and Winnie was "running his mouth." As defendant turned to go back to the house, he heard Winnie rush him. Defendant pulled out his gun and said "get the fuck out of here." Winnie responded, "I don't give a fuck about the gun." Winnie slapped the gun away and the two struggled. Defendant's arm had been injured earlier, and it went numb. Winnie rushed at defendant again, and defendant shot him. Defendant then returned to his house.

[FN 1: All statutory references are to the Penal Code.]

People v. Bradley, No. A145227, 2016 WL 4124289, at *1-2 (Cal. Ct. App. Aug. 3, 2016),

3

review denied (Oct. 12, 2016).

IV. The Petition

Petitioner sets forth two claims: (1) insufficient evidence supported the single aggravating factor cited by the trial judge to justify the upper term sentence for manslaughter; (2) the upper term for both the manslaughter sentence and gun use enhancement constituted an improper dual use of facts. (ECF No. 1 at 5, 7.) In an attachment, petitioner identified his claims for relief:

> Petitioner was denied due process of law under the 14th Amendment when the state trial court imposed multiple upper term sentences for a single act or omission. The court ignored key evidence in imposing the upper term for manslaughter conviction without deliberation of the jury and violated the prohibition against dual use of facts for both the manslaughter and gun use enhancement. See Cal. Penal Code Section 654 sub(a), Apprendi v. New Jersey (2000) U.S. 466, Blakely v. Washington (2004) 542 U.S. 296, Cunningham v. California (2007) 549 U.S. 270.

(ECF No. 1 at 18.) Petitioner also appended a copy of his petition for review filed in the California Supreme Court. (ECF No. 1 at 28-54.)

V. Has Petitioner Exhausted State Court Remedies?

A. Legal Standards

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). If exhaustion is to be waived, it must be waived explicitly by respondents' counsel. 28 U.S.C. § 2254(b)(3).[2] A waiver of exhaustion, thus, may not be implied or inferred. A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985), cert. denied, 478 U.S. 1021 (1986).

The state court has had an opportunity to rule on the merits when the petitioner has fairly presented the claim to that court. The fair presentation requirement is met where the petitioner has described the operative facts and legal theory on which his claim is based. Picard, 404 U.S. at 277-78. Generally, it is "not enough that all the facts necessary to support the federal claim were

---

[2] A petition may be denied on the merits without exhaustion of state court remedies. 28 U.S.C. § 2254(b)(2).

4

before the state courts . . . or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982). Instead,

> [i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan v. Henry, 513 U.S. 364, 365 (1995). Accordingly, "a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." Gray v. Netherland, 518 U.S. 152 (1996). The United States Supreme Court has held that a federal district court may not entertain a petition for habeas corpus unless the petitioner has exhausted state remedies with respect to each of the claims raised. Rose v. Lundy, 455 U.S. 509 (1982). The Court must dismiss a mixed petition without prejudice to give a petitioner an opportunity to exhaust the claims if he can do so. See Rose, 455 U.S. at 520-22. However, if a petition contains unexhausted claims, a petitioner may, at his option, withdraw the unexhausted claims and go forward with the exhausted claims. Anthony v. Cambra, 236 F.3d 568, 574 (9th Cir. 2000) ("This court has made clear that district courts must provide habeas litigants with the opportunity to amend their mixed petitions by striking unexhausted claims as an alternative to suffering dismissal.")

B. <u>Discussion</u>

Here, petitioner appears to contend the instant petition is a "mixed petition" containing both exhausted and unexhausted claims. In his motion for stay, petitioner claims his petition contains "exhausted and unexhausted claims. Specifically claims one and two." (ECF No. 21 at 1.) Thus, he concedes that he has not yet exhausted some portion of the petition, but fails to identify which claim he contends is exhausted. On the other hand, respondent contends that both claims are unexhausted.

As argued by respondent, in the petition for review, petitioner failed to argue any federal claims in the California Supreme Court. In his first claim, petitioner cited Supreme Court authority solely for context, to explain that California amended the determinate sentencing law to

5

1 | remove the middle term as the presumptive sentence, and permit the trial court to choose the
2 | lower, middle, or upper term without stating factors in aggravation or mitigation under California
3 | Penal Code § 1170(b). (Ex. 9 at 6-7.) Nowhere in the petition for review did petitioner argue that
4 | a federal constitutional right or federal law was violated. Rather, petitioner argued that "the
5 | imposition of an upper term sentence is reviewed for an abuse of discretion," and contended that
6 | the trial court abused its discretion in imposing the upper terms for both the principal offense and
7 | the gun use, and that the sole aggravating factor upon which it relied to impose the upper term for
8 | manslaughter was not supported by the evidence." (Ex. 9 at 8.) Further, petitioner argued that
9 | under § 1170(b), the trial court is still required to state its reasons for the term selected, and in this
10 | case, the evidence did not justify the upper term. (Ex. 9 at 12-16.) Because petitioner did not
11 | fairly present any federal claim based on the trial court's abuse of discretion in evaluating the
12 | aggravating factor that supported the sentence, such claim is not exhausted.

13 |       Similarly, petitioner argued no violation of the federal constitution or of a federal law in
14 | connection with his second claim that the imposition of the upper term for both the manslaughter
15 | conviction and the gun use enhancement constituted an improper dual use of facts. Rather,
16 | petitioner relied solely on state law, asking whether the trial court violated the rules against dual
17 | use of facts in violation of California Penal Code § 1170(b). Because petitioner expressly relied
18 | on state law, and failed to argue any federal violation, he failed to fairly present such claim to the
19 | California Supreme Court and therefore claim two is also unexhausted.

20 |       Therefore, petitioner failed to exhaust his state court remedies as to both claims. On
21 | March 30, 2018, petitioner filed a letter claiming that he received the Solano County Superior
22 | Court's order denying his petition for writ of habeas corpus on March 22, 2018, and he is now
23 | ready to file his traverse, suggesting he believes he has now exhausted his state court remedies.
24 | However, filing in the superior court is insufficient to exhaust petitioner's claims. Moreover, the
25 | California Supreme Court reflects no petition for writ of habeas corpus has been filed by
26 | petitioner.[3] Thus, the instant claims remain unexhausted.

---

[3] The court may take judicial notice of facts that are "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), including undisputed information posted on

VI. Alternative Analysis

Despite petitioner's failure to exhaust his federal claims, respondent argues, *inter alia*, that the claims fail to present a federal question or are based solely on state law. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." See 28 U.S.C. § 2254(b)(2). As set forth below, the undersigned finds that both claims should be denied.

A. Improper Upper Term Manslaughter Sentence?

The California Court of Appeal addressed this claim as follows:

> Defendant argues the facts do not support the trial court's conclusion he engaged in violent conduct indicating he poses a serious threat to society. We disagree and find the trial court did not abuse its discretion in evaluating this factor.
>
> As an initial matter, defendant takes issue with the trial court's finding that defendant knew it was Winnie who had arrived at his house when he armed himself and opened the garage door. Defendant asserts he told police he did not know who was at his house, and there was no evidence he was familiar with the car Winnie was driving, which Winnie had borrowed from his uncle. Defendant also contends Van Hoose's texts indicated only she and Winnie would drop by, and they would leave his possessions in the mailbox. Defendant asserts he was concerned when three people arrived and all of them got out of the car, especially since someone had recently tried to break into his house.
>
> But there was ample evidence to support a contrary conclusion. Defendant communicated with both Winnie and Van Hoose shortly before the shooting, and thus he knew someone was stopping by to drop off his effects. That Winnie decided to leave defendant's possessions at his front door rather than in his mailbox should not have been a cause for alarm. Nor was it unreasonable for the trial court to reject defendant's assertion he was surprised when he saw three people in front of his house, especially since defendant knew someone would be stopping by. Moreover, security cameras had been installed at the property, and the court was under no obligation to accept defendant's self-serving claim he could see three people outside his home but could not discern their identities.
>
> Next, defendant argues the trial court failed to address the "considerable evidence" showing he tried to get Winnie to leave, and he resorted to firing the gun and then pointing it at Winnie

---

official websites. Daniels-Hall v. National Education Association, 629 F.3d 992, 999 (9th Cir. 2010). It is appropriate to take judicial notice of the docket sheet of a California court. White v. Martel, 601 F.3d 882, 885 (9th Cir. 2010). The address of the official website of the California state courts is www.courts.ca.gov.

> because Winnie refused to do so. According to defendant, his attempts to end the confrontation were repeatedly thwarted by Winnie, and Winnie's conduct caused him to take "increasingly drastic action." But based on this record, it was reasonable to conclude defendant, not Winnie, escalated the situation. As the trial court explained, defendant did not need to come out with a firearm, and "[defendant] could have certainly kept the gun at his side, and simply let the victim leave without pointing the gun at him, without firing a shot." It was reasonable to conclude Winnie might have peacefully departed had defendant not provoked him. Further, given the conflicting accounts of the incident, the court need not have accepted defendant's assertion that Winnie rushed at him immediately before the shooting.

People v. Bradley, 2016 WL 4124289, at *3.

In Apprendi, the Supreme Court held that, regardless of its label as a "sentencing factor," any fact, other than the fact of a prior conviction, "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Court later held that the "statutory maximum" for Apprendi purposes "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303.

Under California's sentencing law, three terms of imprisonment are specified for most offenses: a low term, a middle term, and an upper term. Cal. Penal Code § 1170(b). Until March 29, 2007, California law required a sentencing court to impose the middle term unless there were circumstances in aggravation or mitigation. See Cunningham v. California, 549 U.S. 270, 278-79 (2007).

In Cunningham, the Supreme Court found that the presumptive middle term, not the upper term, was the "relevant statutory maximum" for purposes of Apprendi. Cunningham, 549 U.S. at 288. The Court held that because California law authorized the trial judge, rather than the jury, to find the facts permitting the imposition of an upper term sentence, the sentencing scheme violated the Sixth Amendment. Cunningham, 549 U.S. at 293.

In response to Cunningham, the California Legislature amended the state's Determinate Sentencing Law such that imposition of an aggravated term is now discretionary and does not depend on the finding of any aggravating factors. Cal. Penal Code § 1170(b) (2007); Butler v. Curry, 528 F.3d 624, 652 n.20 (9th Cir. 2008) (acknowledging amendment). Under the amended

8

statute, "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." Cal. Penal Code § 1170(b). The amended statute took effect on March 30, 2007. See Cal. Stats. 2007, ch. 3, § 7. Therefore, after March 30, 2007, a trial court still exercises its discretion in choosing the upper, middle or lower terms, but no additional fact finding is required to impose the term. See Butler v. Curry, 528 F.3d at 652 n.20 ("Imposition of the lower, middle or upper term is now discretionary and does not depend on the finding of any aggravating factors"); Creech v. Frauenheim, 800 F.3d 1005, 1009 (9th Cir. 2015). An upper-term sentence has become the maximum sentence for Apprendi purposes. Creech, 800 F.3d at 1016.

Here, petitioner was sentenced in 2015, after § 1170(b) was amended. Therefore, the trial judge had discretion to sentence petitioner to the maximum term for manslaughter, and petitioner's sentence did not violate the Constitution or Apprendi. Creech, 800 F.3d at 1017, citing United States v. Booker, 543 U.S. 220, 233 (2005); Shoemaker v. Arnold, 2016 WL 237113 (N.D. Cal. Jan. 20, 2016) (state court's rejection of prisoner's challenge to upper term sentence for voluntary manslaughter was not contrary to, or an unreasonable application of clearly established Supreme Court precedent); Ochoa v. Uribe, 2013 WL 866118, at *7 (C.D. Cal. Jan. 28, 2013) ("Because the amendment to § 1170(b) eliminated the middle term as the statutory maximum, petitioner has not shown that the imposition of the upper terms violated the rule formed in Apprendi, Blakely, and Cunningham."); see also People v. Frandsen, 196 Cal. App. 4th 266, 269 (2011) (defendant properly sentenced to upper term for involuntary manslaughter in light of amended section 1170(b) as construed by People v. Sandoval, 41 Cal. 4th 825, 62 Cal. Rptr. 3d 588 (2007).).

Moreover, petitioner's state-law sentencing claim is not cognizable on federal habeas review. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990). But even if the claim was cognizable, petitioner has failed to demonstrate error, or fundamental unfairness. The Court of Appeal properly found there was ample evidence to support the aggravating factor. At sentencing, the trial judge evaluated the facts of the crime, identified one factor in mitigation and one in aggravation, and then found "the aggravating factor indicating serious danger to society"

outweighed the one mitigating factor. (RT at 625.) In California, "the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term." See People v. Black, 41 Cal. 4th 799, 813, 62 Cal. Rptr. 3d 569 (2007), cert. denied, 552 U.S. 1144 (2008); see also Butler v. Curry, 528 F.3d at 642-43. This court must defer to this principle of state law. See Butler v. Curry, 528 F.3d at 642.

The state appellate court's rejection of petitioner's challenge to his upper term manslaughter sentence was not contrary to, or an unreasonable application of clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d). Petitioner's first claim should be denied.

B. Improper Dual Use of Facts?

The California Court of Appeal addressed this claim as follows:

> Next, defendant argues the imposition of the upper term for both the manslaughter conviction and the gun use enhancement constituted an improper dual use of facts. We disagree.
>
> Section 1170 and rule 4.420 prohibit the dual use of certain factors in determining whether to impose an aggravated term. Specifically, section 1170, subdivision (b) states: "[T]he court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." Rule 4.420(c) states: "To comply with section 1170(b), a fact charged and found as an enhancement may be used as a reason for imposing an upper term only if the court has discretion to strike the punishment for the enhancement and does so. The use of a fact of an enhancement to impose the upper term of imprisonment is an adequate reason for striking the additional term of imprisonment, regardless of the effect on the total term." Rule 4.420(d) provides: "A fact that is an element of the crime upon which punishment is being imposed may not be used to impose a greater term."
>
> Thus, the court may not use a fact that is an element of the crime as an aggravating factor, nor may the court impose a greater term based on the use of a firearm or any other factor if that is also the basis of an enhancement. Additionally, the court cannot rely on the same fact to impose a consecutive sentence and to impose the aggravated term. "Improper dual use of the same fact for imposition of both an upper term and a consecutive term or other enhancement does not necessitate resentencing if '[i]t is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error.' " (People v. Coleman (1989) 48 Cal.3d 112, 166.)
>
> Defendant argues that, in this case, the trial court imposed the upper term for the manslaughter conviction based solely on his use of a firearm to commit the act. Defendant contends this was an improper dual use of facts, because the use of the gun was also the basis for a

10

sentencing enhancement. As an initial matter, defendant waived this argument by failing to raise it below. (See People v. Scott (1994) 9 Cal.4th 331, 355 (Scott).) Even if there was no waiver, we cannot conclude the trial court abused its discretion. The trial court aggravated the manslaughter sentence because defendant acted in a violent manner that escalated the situation. As the trial court explained, defendant came out of his garage with a gun in hand, pointed it in the victim's face, and fired a warning shot in the air. All of this led to a struggle over the gun, which culminated in the victim's death. The trial court did not impose an upper term based on the mere fact defendant used a gun to commit the crime. Rather, the aggravation resulted from the manner in which defendant used the gun to antagonize the victim and heighten the conflict.

Contrary to defendant's contention, People v. Dixon (1993) 20 Cal.App.4th 1029 does not demand a different result. In that case, the defendant was found guilty of first degree murder, two counts of robbery, and assault with a deadly weapon. (Id. at p. 1033.) The court also found true the special allegation as to each robbery count and as to the assault count that the defendant had personally used a firearm in violation of section 12022.5. (Id. at p. 1033.) The court sentenced the defendant to the upper term of five years for the first robbery count, explaining the defendant had used his gun in such a way as to " 'create genuine terror in the heart and mind of [the victim]. He had the gun stuck in her face and continued threatening ... to shoot her.' " (Id. at p. 1037.) Further, the trial court imposed a consecutive sentence for the second robbery count, since " 'the defendant obviously used a firearm.' " (Ibid.) On appeal, the court found the threat to kill the victim was properly used as a basis for the aggravated enhancement of the first robbery count. (Id. at p. 1038.) However, the court reversed the consecutive sentence for the second robbery count since the only factor relied upon to impose the consecutive sentence was the gun use, which had already been used as a basis for another enhancement. (Id. at pp. 1038–1039.) In the instant action, the court aggravated defendant's sentence based on the manner in which he used the gun, not merely because the gun was used in the commission of the crime.

Next, defendant argues the trial court abused its discretion in imposing the aggravated term for the firearm enhancement. This argument was also not raised below and therefore waived. In any event, we find the trial court acted within its discretion. The specific factor relied upon by the trial court in making this sentencing decision was the gun was not just used in any fashion, but was used to cause death. As defendant notes, the use enhancement imposed here was pursuant to section 12022.5, subdivision (a). By referencing the fact that the use of the firearm resulted in death, the trial court may have been drawing an analogy to section 12022.53, applicable to murder and various other crimes (but not to manslaughter), which has three distinct sentences depending upon the proof of certain factors. Section 12022.53 provides for a 25-year-to-life enhancement if the crime resulted in great bodily injury or death. (§ 12022.53, subd. (d).) Section 12022.5, subdivision (a) contains no similar provision enhancing the sentence if death results, however, that does not by itself prevent a court from

11

        considering the resulting death as a general circumstance in aggravation relating to the enhancement.

        Defendant further contends that the death of the victim is an element of voluntary manslaughter (as it requires the killing of a human being), and thus the court could not rely upon that fact to aggravate the enhancement. But the death of the victim is not an element of the firearm enhancement. Even if the trial court was barred from aggravating the firearm enhancement sentence based on a fact which was an element of the underlying offense, there is no reasonable probability "that a more favorable sentence would have been imposed in the absence of the error." (People v. Osband (1996) 13 Cal.4th 622, 730.) For example, there is no reasonable probability the court would not have relied upon other factors, such as the manner in which the gun was used to escalate the situation, to impose the upper term on the enhancement. While the same facts were used to aggravate the sentence for the manslaughter conviction, "dual use of a fact or facts to aggravate both a base term and the sentence on an enhancement is not prohibited." (People v. Moberly (2009) 176 Cal.App.4th 1191,1198 (Moberly).)[FN 3]

        [FN 3: A contrary holding was reached in People v. Velasquez (2007) 152 Cal.App.4th 1503, where the court stated in a footnote: "The same fact cannot be used to impose an upper term on a base count and an upper term for an enhancement." (Id. at p. 1516, fn. 12.) As stated in Moberly, this footnote is dicta, and it is unsupported by Scott, supra, 9 Cal.4th 331, which it relies upon as authority. (Moberly, supra, 176 Cal.App.4th at p. 1198.)]

People v. Bradley, 2016 WL 4124289, at *4-5.

        As set forth above, the California Court of Appeal concluded that petitioner forfeited his second claim by failing to make a contemporaneous objection to the sentencing court's alleged failure to exercise its discretion to consider mitigating factors for the purpose of reducing petitioner's sentence. "As an initial matter, defendant waived this argument by failing to raise it below." People v. Bradley, 2016 WL 4124289, at *4. Respondent argues that the state court's finding of waiver constitutes a state procedural bar precluding this court from addressing the merits of that claim.

        State courts may decline to review a claim based on a procedural default. Wainwright v. Sykes, 433 U.S. 72 (1977). As a general rule, a federal habeas court "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting Coleman v.

Thompson, 501 U.S. 722, 729 (1991)). The state rule is only "adequate" if it is "firmly established and regularly followed." Id. (quoting Ford v. Georgia, 498 U.S. 411, 424 (1991)); Bennett v. Mueller, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and consistently applied.") The state rule must also be "independent" in that it is not "interwoven with the federal law." Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983). Even if the state rule is independent and adequate, the claims may be heard if the petitioner can show: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 749-50.

Respondent met his burden of adequately pleading an independent and adequate state procedural ground as an affirmative defense. See Bennett, 322 F.3d at 586. Petitioner does not deny that his trial counsel did not raise a contemporaneous objection to the sentencing court's alleged failure to exercise its discretion when imposing petitioner's sentence. Although the state appellate court addressed petitioner's second claim on the merits, it also expressly held that the claim was waived on appeal because of defense counsel's failure to object. Petitioner has failed to meet his burden of asserting specific factual allegations that demonstrate the inadequacy of California's contemporaneous-objection rule as unclear, inconsistently applied or not well-established, either as a general rule or as applied to him. Bennet, 322 F.3d at 586; Melendez v. Pliler, 288 F.3d 1120, 1124-26 (9th Cir. 2002). Petitioner has also failed to demonstrate that there was cause for his procedural default or that a miscarriage of justice would result absent review of the claim by this court. See Coleman, 501 U.S. at 748; Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir. 1999). Therefore, petitioner's second claim appears to be procedurally barred. See Coleman, 501 U.S. at 747; Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004).

But even if petitioner's second claim is not procedurally barred, it should be denied. Petitioner's claim does not allege a federal constitutional violation. A challenge to a state court's application of its own sentencing laws -- such as an alleged improper "dual use" claim -- is not subject to federal habeas review. Lewis v. Jeffers, 497 U.S. at 780; Christian v. Rhode, 41 F.3d

1  461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's

2  misapplication of its own sentencing laws does not justify federal habeas relief."); Williams v.

3  Walker, 461 Fed. App'x 550, 554 (9th Cir. 2011) (rejecting improper dual use sentencing claim

4  because petitioner failed to cite a basis for federal relief); Flores v. Fox, 2017 WL 2664213 at *6

5  (C.D. Cal. 2017) (same). Thus, whether or not the sentencing judge abused his discretion under

6  state law when he failed to mitigate petitioner's sentence is not cognizable under federal

7  constitutional law.

8  On federal habeas review, the question "is not whether the state sentencer committed

9  state-law error," but whether the sentence imposed on the petitioner is "so arbitrary or capricious"

10  as to constitute an independent due process violation. Richmond v. Lewis, 506 U.S. 40, 50

11  (1992). See also Lewis v. Jeffers, 497 U.S. at 780; Laboa v. Calderon, 224 F.3d 972, 979 (2000)

12  ("A State violates a criminal defendant's due process right to fundamental fairness if it arbitrarily

13  deprives the defendant of a state law entitlement."); Fetterly v. Paskett, 997 F.2d 1295, 1300 (9th

14  Cir. 1993) ("the failure of a state to abide by its own statutory commands may implicate a liberty

15  interest protected by the Fourteenth Amendment against arbitrary deprivation by a state").

16  However, "federal courts are extraordinarily chary of entertaining habeas corpus violations

17  premised upon asserted deviations from state procedural rules." Hernandez v. Ylst, 930 F.2d 714,

18  719 (9th Cir. 1991).

19  Here, the state court reached the merits of petitioner's claim and properly rejected it. The

20  California Court of Appeal found that the trial judge did not abuse his discretion in aggravating

21  the manslaughter sentence or in imposing the aggravated term for the firearm enhancement. In

22  imposing the upper term for the manslaughter sentence, the state court found the trial judge

23  properly relied on the manner in which petitioner used the gun to antagonize the victim, and

24  escalated the conflict between petitioner and the victim. In imposing the firearm enhancement,

25  the state court found that the trial judge properly based his decision on petitioner's use of the

26  firearm resulting in death. A fair reading of the sentencing transcript supports the state court's

27  conclusions. (Reporter's Transcript ("RT") at 621-29.) The trial judge imposed the high-end

28  sentence on petitioner primarily because petitioner's actions posed a serious danger to society.

14

(RT at 625.) At sentencing, the trial judge stated on the record that he was aware of the prohibition of the dual use of facts. (RT 623.) The judge discussed his findings in aggravation and mitigation, as well as his thought process in finding that the one aggravating factor outweighed the one mitigating factor, and the aggravating factor indicated a serious danger to society. (RT 623-26.) In short, under the circumstances presented here, and based on the record before this court, it does not appear the sentencing court applied state sentencing laws in an arbitrary or capricious manner or that petitioner's sentence is based on any proscribed federal grounds. Accordingly, petitioner is not entitled to relief on his second claim.

VII. Petitioner's Motion for Stay

Because petitioner's federal claims fail on the merits, it would be futile to grant petitioner a stay to exhaust such claims in the California Supreme Court.

VIII. Petitioner's Request for Extension

On March 30, 2018, petitioner filed a motion for extension of time to file a traverse. However, petitioner's motion is untimely. Respondent filed his answer on September 15, 2017, and on October 17, 2017, petitioner was granted thirty days in which to file his traverse. Petitioner's motion is over four months late, and is denied as untimely.

IX. Conclusion

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for extension of time (ECF No. 24) is denied as untimely; and

IT IS RECOMMENDED that:

1. Petitioner's motion for stay (ECF No. 21) be denied; and

2. Petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to

which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 14, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/cw/brad0828.157